UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

KENNETH TERRY,           )
    Plaintiff,           )   CASE NUMBER: 2:17-cv-300
                              )
v.                        )
                              )
KNOX KERSHAW, INC.       )
                              )   **JURY TRIAL DEMANDED**
    Defendant.          )

## COMPLAINT

COMES NOW the Plaintiff, Mr. Kenneth Terry (hereinafter referred to as "Mr. Terry" or "Plaintiff"), by and through his undersigned counsel, and hereby alleges in his Complaint against the Defendant, Knox Kershaw, Inc. (hereinafter referred to as "Knox" or "Defendant") as follows:

### JURISDICTION AND VENUE

1. This is a suit authorized and brought to secure protection of and to redress the deprivation of rights secured by 42 U.S.C. § 1981, and Title VII of the Act of Congress known as the "Civil Rights Act of 1964," codified at 42 U.S.C. § 2000e *et seq.*, as amended by the "Civil Rights Act of 1991," (hereinafter referred to collectively as "Title VII").

2. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1367.

3. The venue of this action is properly placed in the Middle District of Alabama pursuant to 28 U.S.C. § 1391 because Plaintiff's claims accrued in Montgomery County, Alabama.

1

## ADMINISTRATIVE EXHAUSTION

4. Plaintiff filed two (2) Charges of discrimination with the federal Equal Employment Opportunity Commission (hereinafter referred to as "EEOC"). Charge No. 420-2016-03054 (hereinafter the "First Charge") alleged race discrimination, and Charge No. 420-2016-03570 (hereinafter the "Second Charge") alleged retaliation following Plaintiff's termination from Knox.

5. Plaintiff filed the First Charge with the EEOC on August 2, 2016. (See Exhibit "A").

6. Plaintiff filed the Second Charge with the EEOC on September 22, 2016, which addressed his August 25, 2016 termination. (See Exhibit "B").

7. The EEOC issued a Dismissal and Notice of Suit Rights (hereinafter the "RTS Notice") for each Charge on February 4, 2017. (See Exhibits "C" and "D").

8. Plaintiff received the RTS Notice for the First Charge on Wednesday, February 8, 2017. (See Exhibit "C"). The day before, on Tuesday, February 7, 2017, Plaintiff received the RTS Notice for the Second Charge. (See Exhibit "D").

9. This Complaint is filed within ninety (90) days of Plaintiff's receipt of the said RTS notices.

10. Plaintiff has thus exhausted all administrative remedies available prior to filing this Complaint.

## PARTIES

11. Plaintiff is a citizen of the United States of America, who currently resides in Montgomery County, Alabama.

12. Plaintiff is over the age of nineteen (19) years of age.

13. Knox, is a domestic corporation and an "employer" whose principal address is located in Montgomery, County, Alabama, 11211 Trackwork Street, Montgomery, Alabama 36117.

## FACTUAL ALLEGATIONS

14. Plaintiff is black.

15. Defendant hired Plaintiff on or around February 2014, initially as a temporary worker.

16. After successfully completing two (2) probationary periods, Defendant hired Plaintiff as a full-time "Assembler". Plaintiff's rate of pay was $12.50 per hour.

17. At the time, Plaintiff was one (1) of only two (2) African-American Assemblers employed by Defendant.

18. In or around August 2015, Plaintiff learned that all Caucasian Assemblers – even those hired **after** Plaintiff – were being compensated at a significantly higher rate of pay than Plaintiff.

19. For example, two (2) Caucasian Assemblers, Eddie and Jimbo, both of whom were hired after Plaintiff, were being paid $15.00 per hour each.

20. Plaintiff decided it was best to keep is head down, and work hard instead of making an issue over the inequitable pay.

21. However, shortly after Plaintiff learned of the much higher pay rate being offered to Caucasian Assemblers, Night Shift Manager, Mr. Tracy Parker ("Mr. Parker") commented on what a good job Plaintiff was doing for the company.

3

22. In response, Plaintiff suggested to Mr. Parker that he should convey that sentiment to Mr. Mike McKee ("Mr. McKee"), the Day Shift Manager, and to Ms. Sheila Baker ("Ms. Baker"), one of Defendant's Human Resources ("HR") representatives.

23. Mr. Parker advised Plaintiff that he could not do anything about the inequitable pay as an Assembler, but that if Plaintiff were to move to the night shift he would be promoted to a "Lead Man" role and that he would get lead man pay, including a shift differential of an additional $1.00 per hour.

24. At the time, Defendant's pay rate for a Lead Man was $18.00 per hour, plus the additional $1.00 differential premium per hour for working the night shift.

25. Plaintiff accepted Mr. Parker's offer, and he began working on the night shift as a Lead Man on or about September 14, 2015.

26. As of the date that Plaintiff filed the First Charge, August 2, 2016, he had been and continued to be Defendant's only African-American Lead Man.

27. However, instead of getting paid the $19.00 per hour promised by Mr. Parker – and which Caucasian lead men were paid – Plaintiff received $14.50 per hour. A Caucasian Lead Man on Day Shift named Rich was being paid $18.00 per hour. Rich as hired after Plaintiff.

28. Until Plaintiff filed the First Charge, his rate of pay did not change.

29. In addition to being paid less than similarly situated Caucasian employees, Mr. Parker and Mr. McKee began to treat Plaintiff with a degree of hostility not directed toward Caucasian employees. Mr. Parker, Mr. McKee and Mr. George Pugh ("Mr. Pugh")

4

also refused to interact with Plaintiff, whereas they would regularly interact with the Caucasian employees.

**30.    Defendant fired Plaintiff, less than one (1) month after Plaintiff filed the First Charge.**

31.    Specifically, Plaintiff filed the First Charge on August 2, 2016. Upon information and belief, Defendant did not learn that Plaintiff filed the Charge until Thursday, August 11, 2016.

32.    On Monday, August 15, 2015, Defendant issued a written warning to Plaintiff. This was the first write-up Defendant had ever issued to Plaintiff. Defendant presented it to Plaintiff on August 17, 2016.

33.    Plaintiff disagreed with the veracity of the write-up; as such, Plaintiff refused to sign the document. Plaintiff immediately presented to HR representative, Mrs. Baker, because he knew the write-up was a sham.

34.    When Plaintiff met with Mrs. Baker, he also explained that he was dissatisfied with being treated less favorably than other employees just because he is Black.

35.    Mrs. Baker – who is responsible for ensuring that complaints of discrimination and retaliation are investigated – ignored Plaintiff's complaints and did not even begin to conduct an investigation.

36.    Approximately one (1) week later, on Tuesday, August 25, 2016, Defendant terminated Plaintiff's employment, citing a "lay-off" that purportedly affected Plaintiff.

37.    Upon information and belief, Defendant's decision to terminate Plaintiff was motived by his being black, and because he opposed racially discriminatory practices and

5

conduct by filing the First Charge and then opposing disparate treatment based on his race, all of which violated which violated federal law.

38. The real reason for Plaintiff's termination is evidenced by the fact that Defendant issued Plaintiff a written warning immediately following its receipt of the First Charge. Additionally, Defendant's reliance on a need to lay off Plaintiff is undermined by its failure to recall Plaintiff or provide any information to him which would suggest that it had an intent of doing so.

## COUNT I – RACE DISCRIMINATION IN VIOLATION OF TITLE VII

39. The allegations contained in paragraphs one (1) through thirty-seven (37) are inclusive and are hereby incorporated by reference.

40. Plaintiff is black and he is a member of a protected racial class.

41. Plaintiff was qualified to do his job as an Assembler, and then as a Lead Man.

42. Defendant paid Plaintiff less than similarly-situated Caucasian employees without justification.

43. Nevertheless, Defendant discriminated against Plaintiff with respect to the terms and conditions of his employment by paying him less than similarly situated Caucasian employees, and by terminating his employment, all of which was motivated by Plaintiff's race.

## COUNT II – RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

44. The allegations contained in paragraphs one (1) through forty-three (43) are inclusive and are hereby incorporated by reference.

45. Plaintiff is black and he is a member of a protected racial class.

46. Plaintiff was qualified to do his job as an Assembler, and then as a Lead Man.

47. Defendant paid Plaintiff less than similarly-situated Caucasian employees without justification.

48. Defendant discriminated against Plaintiff with respect to the terms and conditions of his employment by paying him less than similarly situated Caucasian employees, and by terminating his employment, all of which was motivated by Plaintiff's race.

## COUNT III – RETALIATION IN VIOLATION OF TITLE VII

49. The allegations contained in paragraphs one (1) through forty-eight (48) are inclusive and are hereby incorporated by reference.

50. Plaintiff exercised a protected right under Title VII when he filed the First Charge and when he opposed race discrimination to Defendant's HR representative on August 17, 2016.

51. In response to Plaintiff's protected conduct, Defendant immediately issued to Plaintiff the first write-up it had ever issued to him. When that did not silence Plaintiff, Defendant terminated Plaintiff's employment under the guise of a "lay off".

52. Defendant took these actions against Plaintiff in retaliation for his filing the First Charge and for opposing conduct made unlawful by Title VII generally.

## COUNT IV - RETALATION IN VIOLATION OF 42 U.S.C. 1981

53. The allegations contained in paragraphs one (1) through fifty-two (52) are inclusive and are hereby incorporated by reference.

7

54. Plaintiff exercised a protected right under 42 U.S.C § 1981 when he filed the First Charge and when he opposed race discrimination to Defendant's HR representative on August 17, 2016.

55. In response to Plaintiff's protected conduct, Defendant immediately issued to Plaintiff the first write-up it had ever issued to him. When that did not silence Plaintiff, Defendant terminated Plaintiff's employment under the guise of a "lay off".

56. Defendant took these actions against Plaintiff in retaliation for his filing the First Charge and for opposing conduct made unlawful by 42 U.S.C. § 1981 generally.

WHEREFORE, premises considered, Plaintiff demands judgment against the Defendant for back wages, front wages, compensatory and punitive damages, consequential damages, incidental damages, costs and expenses of this action, including interest, attorney's fees, and any other relief to which he may be entitled.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.**

Respectfully submitted,

Joshua A. Wrady (WRA002)
ASB-9617-J68W
Attorney for Plaintiff

WRADY & MICHEL, LLC
505 20th Street North
Suite 1650
Birmingham, Alabama 35242
Joshua@wmalabamalaw.com
Tel:  (205) 980-5704
Fax:  (205) 994-2819

8

PLAINTIFF'S ADDRESS
3083 Wilena Avenue
Montgomery, Alabama 36110

CLERK OF COURT
Please serve the Defendant via Certified Mail, Return Receipt, at the following address:

Knox Kershaw, Inc.
11211 Trackwork Street
Montgomery, Alabama 36117